DELAWARE, L. & W. R. CO. v. PRICE.

SAME v. DURYEA.

(Circuit Court of Appeals, Third Circuit. April 2, 1915.)

Nos. 1926, 1927.

1. CARRIERS ⬤⟶286—LIABILITY FOR INJURIES TO PASSENGER—APPROACHES TO STATIONS.

A railway station was situated between parallel tracks with a platform serving each track. From the platforms passageways led to a street crossing the tracks a short distance from the station, which were used in walking to and from the station. Adjoining the track on the south side of the station, and separated from it only by a fence, was a parkway, the property of the railroad company, which for many years was used with the company's permission by those going to and from the station in wagons and other conveyances, and the company had opened the fence and built and maintained a passageway from the parkway to the station platform, over which passengers passed from their vehicles to take trains on either track. *Held,* that the permission or invitation, to persons going to the station to take a train on the north track, to cross the south track from such parkway, placed upon the railroad company the duty to protect the plaintiff against the peculiar hazards of that way, as they might be increased or diminished by the movement of trains across it, and the measure of care and protection which they had a right to expect was not affected by the fact that other ways of reaching the station were provided, not requiring the crossing of the track on the company's premises.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1142–1148, 1150–1152; Dec. Dig. ⬤⟶286.]

⬤⟶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**2. TRIAL ☞250—INJURIES TO PASSENGER—INSTRUCTIONS—APPLICABILITY.**

Where actions for injuries to two passengers struck by a train at the same time were not consolidated, but were separately tried, an instruction in one of such actions that the jury could with full propriety bring a verdict for defendant, no matter how they would view its liability to the other injured person, was inappropriate, and properly refused.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 584-586; Dec. Dig. ☞250.]

**3. CARRIERS ☞286—LIABILITY FOR INJURIES TO PASSENGER—APPROACHES TO STATIONS.**

Where plaintiff, on her way to a railroad station, accompanied by her aunt, crossed a track from a parkway customarily used by those who went to the station in vehicles to the station platform, and then recrossed the track to assist her aunt across, and was struck by a train while so doing, there being no averment that she was misconducting herself, or acting otherwise than as a passenger, she was entitled to the same degree of protection from the railroad company while crossing and recrossing the track as on the original trip; and where the circumstances were such that she was not bound to look or listen for approaching trains, instructions to find for defendant if she was injured while recrossing the track to assist her aunt, and to find for defendant if she went to the assistance of her aunt without looking or listening for approaching trains, were properly refused.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1142-1148, 1150-1152; Dec. Dig. ☞286.]

**4. CARRIERS ☞286—LIABILITY FOR INJURIES TO PASSENGER—APPROACHES TO STATIONS.**

Where the circumstances were such that a passenger struck by a train was not bound to look for approaching trains while crossing a track to the station platform from a parkway customarily used by persons going to the station in vehicles, the railway company was not relieved of liability for her injuries by the fact that she did look, but failed to look effectually, so as to see an approaching train.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1142-1148, 1150-1152; Dec. Dig. ☞286.]

**5. CARRIERS ☞325—LIABILITY FOR INJURIES—CONTRIBUTORY NEGLIGENCE.**

A railroad company owes to a passenger a different and higher degree of care from that due to mere trespassers or strangers, and a passenger has a right to rely upon the exercise by the railway of care, and the question of whether or not he is negligent under all the circumstances must be determined on due consideration of the obligations of both the company and the passenger.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 1348; Dec. Dig. ☞325.]

**6. CARRIERS ☞320, 347—ACTIONS FOR INJURIES—QUESTIONS FOR JURY.**

A railway station was situated between parallel tracks, with a platform serving each track. From the platforms passageways led to a street crossing the tracks a short distance from the station, which were used in walking to and from the station. Adjoining the track on the south side of the station, and separated from it only by a fence, was a parkway, the property of the railroad company, which for many years was used with the company's permission by those going to and from the station in wagons and other conveyances, and the company had opened the fence and built and maintained a passageway from the parkway to the station platform, over which passengers passed from their vehicles to take trains on either track. *Held,* that the extent to which passengers might rely upon the care exacted of the railroad in her behalf while crossing the south track from the parkway for the purpose of taking a train on the north track, due in a few minutes, whether the reliance on the railroad by such

passengers, who failed to look and listen, or who looked, but failed to see an approaching train, was greater than the care demanded of the railroad, and whether in relying upon protection by the railroad they failed to care for themselves to the extent which the law required of them, were questions for the jury, and hence the questions of negligence and contributory negligence were properly submitted to the jury; the facts not being such that all reasonable men would of necessity draw the same conclusion therefrom.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1118, 1126, 1149, 1153, 1160, 1167, 1179, 1190, 1217, 1233, 1244, 1248, 1315–1325, 1346, 1350–1386, 1388–1397, 1402; Dec. Dig. ☞320, 347.]

In Error to the District Court of the United States for the District of New Jersey; Wm. H. Hunt, Judge.

Actions by Mildred D. Price and by Josephine Duryea against the Delaware, Lackawanna & Western Railroad Company. Judgment for plaintiff in each case, and defendant brings error. Affirmed.

Frederic B. Scott, of New York City, for plaintiff in error.

James D. Carpenter, Jr., of Jersey City, N. J., for defendants in error.

Before BUFFINGTON, McPHERSON, and WOOLLEY, Circuit Judges.

WOOLLEY, Circuit Judge. These actions were instituted and separately tried to recover damages for personal injuries sustained by the respective plaintiffs while passengers of the defendant railroad company. The actions grew out of the same accident, were based upon the same charges of negligence, and were defended with some variation upon the same ground of contributory negligence, and although before the court on separate writs of error, they were heard and will be considered together. The main question involved is the degree of care for the safety of passengers demanded of the railroad company and required of its passengers under the circumstances of the case, made unusual because of the peculiar character of the premises upon which the station was built and the tracks were laid, upon and across which passengers were permitted or invited to go in taking and in departing from trains.

The defendant's station at Netcong-Stanhope, N. J., is built upon a hill. In front of the station to the north and upon the lower level are the two main tracks of the railroad, upon which pass east-bound and west-bound trains, and in the rear of the station to the south upon the higher level is one track of a branch line, which approaches the station from the west at a curve. The station is thus situated between parallel lines of track 40 or 50 feet apart, each platform serving the line to which it is contiguous. About 150 feet east of the station, the main street of the village crosses the three tracks at right angles. The grade of the hill at which the street ascends is about the same as the grade upon which the station is built. From both the front and rear platforms of the station, and parallel with the two lines of track, are passageways leading to Main street, used by passengers walking to and from the station. Bordering the branch line, on the side opposite the

south side of the station, and divided from it only by an iron rail fence, is a parkway or level plot of land of about one acre in extent. This parkway is the property and a part of the station premises of the defendant railroad company. Because of its greater adaptation to vehicular traffic than the short ascending space between the tracks on Main street, the parkway had been used by the company's patrons with the company's permission for more than 20 years in going to and from the station in wagons, automobiles, and other conveyances. At this place vehicles customarily stood after discharging passengers and baggage for outgoing trains, and while waiting for passengers and baggage from incoming trains. At a convenient place immediately opposite the station, the company had opened the fence and built and maintained a passageway from the parkway to the southern platform of the station, over which passengers in leaving their vehicles passed to the station in order to take trains going in any direction upon any track, and across which their baggage was conveyed. This passageway constituted the third way supplied by the company for approach to the station.

On the morning of July 9, 1913, the plaintiffs, Josephine Duryea and Mildred D. Price, her niece, drove into the parkway, and with some haste alighted and started to cross the track in order to board a train due in a couple of minutes upon the lower level on the north side of the station. Mildred D. Price testified that after alighting from the automobile, and after assisting her aunt to alight, she looked in the direction of the curve for a train on the track she was about to cross, and neither saw nor heard one, and that she and her aunt, who was a feeble woman, then proceeded to cross together. When she passed through the fence and was upon the passageway approaching the track, she looked and listened again, and, neither seeing nor hearing a train, proceeded with her aunt to cross, and the two were struck by a train moving past the station at a high rate of speed, and were injured. The evidence for the defendant, however, tended to show that Mildred D. Price had crossed the track to the station platform, and then returned to assist her aunt, and that she and her aunt were struck on her return trip across the track to the station. There was the usual positive and negative testimony concerning the blowing of the whistle and ringing of the bell of the engine of the approaching train. There was no testimony that the defendant company otherwise protected the plaintiffs from the danger then imminent.

From this testimony it appears that Josephine Duryea, after she became a passenger, neither looked nor listened for the on-coming train, while Mildred D. Price, after she became a passenger, did look and listen from one or two different positions, but that she did not see the on coming train, or hear its warnings, if any were given. There is no contention that either of the plaintiffs knew of the approaching train and rashly endeavored to cross in front of it. The contention of the defendant, however, is that, notwithstanding the high duty which it admits the law placed upon it to care for and protect its passengers, the law also required of each of the plaintiffs a care and caution equal to the peculiar hazards of the situation in which they found themselves, and that their conduct constituted contributory negligence,

which the court should have found as a matter of law, and accordingly should have directed a verdict for the defendant.

In the case against Duryea, the railroad company, plaintiff in error, abandoned all of its assignments of error excepting the first, in which it charged that the court erred in refusing to direct a verdict in its favor on the ground that:

"On the uncontradicted evidence that the defendant company did not make it obligatory on the plaintiff to cross at this crossing, but provided ways and means other than this crossing.

"Because of the evidence adduced in the general situation that the plaintiff was guilty of contributory negligence."

[1] In replying to the charge of contributory negligence, the plaintiffs relied upon the rule as to the measure of care required of a railroad company for the protection of its passengers declared in the case of Jewett v. Klein, 27 N. J. Eq. 550. The defendant denied the application of that rule to the cases at bar, upon the contention that the rule in that case was based upon the fact that in that case "the company had provided no way of approach to the passenger train except by crossing" the track, while in the cases under consideration the company had provided two other ways, neither of which required the crossing of a track upon the premises, namely, those which lead from the main street of the village along the two lines of tracks to the station.

In the case of Jewett v. Klein, the Court of Errors and Appeals of the state of New Jersey gave the measure of care and protection which a passenger, about to cross a track to board a train, has a right to expect, and decided in such a case that, when acting in reliance upon that care and protection, the failure of the passenger to look is not contributory negligence. The court said:

"It was insisted that the plaintiff was negligent, in that he did not, before approaching the passenger train which he was about to take, look up or down the track to see whether there was danger from an approaching train, and in that he approached the passenger train diagonally from the platform of the station, and before the passenger train had come to a full stop. It seems to me that in none of these particulars can it justly be said that the plaintiff was negligent. Upon the arrival of the train which he was about to take at the station at which he was waiting for it, he approached it in the usual and ordinary manner, so as to be ready to get on board as soon as permitted to do so after it had stopped. He was not bound to take the very shortest route from the platform of the station to that of the nearest or any other car of the train on which he desired to take passage, *nor was he bound to look to see whether another train was approaching,* or wait, before crossing the easterly track, till the passenger train had come to a full stop, because *he was fully warranted, under the circumstances, in believing that no train would, at that time, pass over the track which he was obliged to cross in order to take one of the regular passenger trains of the road;* and it might not be going too far to say that, if he had looked and had observed an approaching train on the easterly track, he would have been fully warranted in proceeding on his way across the track to the passenger train, upon the reasonable supposition that the approaching train would stop before it reached a point opposite the passenger train. The company had provided no way of approach to the passenger train, except by crossing, on a level, the eastern track of the railroad; and, in my opinion, a passenger was fully justified in concluding that he would be safe from harm from a train on the track which

he was thus obliged to cross in order to secure his passage. The company had, in effect, assured him that he would at that time be safe in going in the usual way from the station to the passenger train. Acting on such assurance, this plaintiff did no more or less than ordinarily prudent and careful persons do almost every day under like circumstances, and may be expected and have a right to do. The principles applicable to this case, and to that of a traveler over the public highway crossing a railroad on the same level, are quite different."

It is true that in the case of Jewett v. Klein the only approach provided by the railroad company to the train which the passenger was about to board was across the track upon which he was standing when injured, and it is true that the court in its opinion adverted to the fact that the company had provided no other way of approach; but it is not a necessary conclusion that upon that fact alone did the court lay down the measure of care required of a railroad company towards its passengers and the extent of reliance which a passenger may, without contributory negligence, place upon its performance. That case is distinguished from the cases under consideration by the fact that in the former case the railroad company provided but one way of approach to the train, while in these cases the railroad company provided three ways. It seems to us that the difference in the character of the ways in the different cases might make some difference in the measure of care to be exerted by both the railroad company and the passenger; but the difference in the number of ways makes no difference in the measure of care which the law exacts. If the jury found that the way Josephine Duryea was pursuing when she was injured was one of the ways provided by the railroad company for passengers to enter upon and cross its premises in order to take an outgoing train, it was bound to the same degree of care to protect her from injury on that way as though it were the only way it had opened to her. The fact that she, as a passenger, was permitted or invited to enter its premises by that way, placed upon the railroad company the duty to protect her against the peculiar hazards of that way, as the same might be increased or diminished in the movement of trains across it. We are therefore of opinion that these cases are not distinguished from the case of Jewett v. Klein because of the difference in the number of ways provided for passengers.

The remaining specification of error, namely, that "because of the evidence adduced in the general situation the plaintiff was guilty of contributory negligence," will be considered in connection with errors assigned in the case of Price.

In the case of Mildred D. Price, the railroad company, plaintiff in error, abandoned all of its assignments of error excepting the fifth assignment and subdivisions 9, 10, and 12 of the sixth assignment. The latter specifications of error, though not made in accordance with the rules, will nevertheless be considered. They go to the refusal of the court to charge upon points requested.

[2] The case of Duryea against the railroad company was tried and a verdict rendered for the plaintiff before the trial of the case of Price against the railroad company. The defendant urged that there was nothing inconsistent in the theory of the defense that the accidents

to the two plaintiffs were entirely different in legal character. It asked for the instruction:

"Therefore you can with full propriety bring a verdict for the defendant, no matter how you would view its liability to Mrs. Duryea."

As the cases were not consolidated, and as the case of Mrs. Duryea was not being tried by the jury which was then trying the case of Mrs. Price, we are of opinion that the instruction requested was inappropriate, and properly refused.

[3] The defendant requested the court to instruct the jury that, as the case—

"contains no evidence that Mrs. Price was injured while endeavoring to rescue her aunt from a situation of imminent danger caused by the negligence of the defendant, and therefore if you find that Mrs. Price first crossed the passageway from the automobile to the station platform, and then subsequently recrossed said track to assist her aunt to cross said track, and was injured while so doing, your verdict must be for the defendant company."

It is not denied that, when she made the three movements referred to, the plaintiff was all the while a passenger, and it is not averred that in making the several movements she was misconducting herself, or acting otherwise than as a passenger. In returning from a place of safety upon the platform, which she had reached by her first movement, she did not relieve the railroad company of the protection which under the law it was required to afford her as long as she remained a passenger; and in returning with her aunt across the track toward the platform, her third movement was in no respect different from her initial movement, nor was the protection to which she was entitled in any degree different. We are therefore of opinion that the court did not err in refusing to make the charge requested.

The remaining specification of error going to the refusal of the court to charge as requested is that:

"If you believe that Mrs. Price did not look or listen for the approach of the engine before she went to the assistance of her aunt to cross said track, or before she started with her aunt to cross said track, your verdict must be for the defendant."

Holding that the care demanded of the railroad and the caution required of the passenger were the same in the several movements of the plaintiff, we are of opinion that the court properly refused to charge this point.

[4] The substance of the fifth and remaining assignment of error is that the trial court erred in refusing to direct a verdict for the defendant upon the following theory of the law. The defendant admitted that, under the rule of Jewett v. Klein, supra, the plaintiff, in crossing the track, "was not bound to look to see whether [the] train was approaching," but contended that, having looked, the law required her to look effectually, and by looking, but failing to look effectually, she was guilty of contributory negligence, which the court should have found as a matter of law, and accordingly should have directed a verdict for the defendant.

We are not inclined to yield to this contention. If the plaintiff had looked, though not required so to do, and by looking saw the train

in time to avoid it, and then walked into the danger which she saw, the question would be entirely different, and doubtless she would have been guilty of contributory negligence, notwithstanding negligence of the railroad company in driving one of its trains at a high rate of speed across the passageway. But when, under the circumstances, the law relieved the passenger of the duty of looking, and required the railroad company to protect the passenger, without requiring her to look, it is difficult to conceive why the railroad company should be relieved of its obligation simply because the passenger did what the law did not require her to do. It would be a harsh rule to strip a passenger of the protection which under the circumstances the law gives her, if by extra caution she happens to do something to care for herself which she is not required to do, without regard to whether she in fact is thereby apprised of the danger in which she is placed by the failure of the railroad company to perform its duty to her.

The adoption of such a rule would disturb, if not destroy, well-established rules of the law of negligence. It would tend to separate, and thereby withdraw from one or the other, the duty to exercise care which the law in every situation places in some degree upon both the passenger and the railroad company. It would make the passenger by looking, assume the sole responsibility for her safety, and relieve the railroad company of all responsibility, which in point of law is quite as wrong as the converse of the proposition, by which the railroad company might be made to accept the whole responsibility, and thereby become a guarantor of the passenger's safety. Such rulings would dispose of the accepted principle that, for the safety of a passenger, both the railroad and the passenger, though in different degrees, are required to exercise a care and caution commensurate with and to be determined by the circumstances of the place and occasion.

[5] The correct rule, as we understand it, and the one by which we must decide whether the trial court erred in refusing to find the conduct of the plaintiffs in these suits to amount to contributory negligence, and in declining, therefore, to direct verdicts for the defendant, is declared in the case of Warner v. Baltimore & Ohio Railroad Co., 168 U. S. 339, 346, 18 Sup. Ct. 68, 70 (42 L. Ed. 491), in which Mr. Justice White, in speaking for the Supreme Court, cites the case of Jewett v. Klein in support of his statement that:

"A railroad company owes to one standing towards it in the relation of a passenger a different and a higher degree of care from that which is due to mere trespassers or strangers, and it is conversely equally true that the passenger, under like conditions, has a right to rely upon the exercise by the railway of care; and the question of whether or not he is negligent, under all the circumstances, must be determined on due consideration of the obligations of both the company and the passenger. As said by the Court of Appeals of New York in Terry v. Jewet, 78 N. Y. 338, 344: 'There is a difference between the care and caution demanded in crossing a railroad track on a highway and in crossing while at a depot of a railroad company to reach the cars. No absolute rule can be laid down to govern the passenger in the latter case under all circumstances. While a passenger has a right to pass from the depot to the train on which such passenger intends to travel, and the company should furnish reasonable and adequate protection against accident in the enjoyment of this privilege, the passenger is bound to exercise proper care, prudence, and caution in avoiding danger. The degree of care and cau-

tion must be governed in all cases by the extent of the peril to be encountered and the circumstances attending the exposure.'"

[6] In the cases under consideration, the plan of the premises, the location of the station, the situation of the tracks, a way of approach to the station, provided by the railroad company, which required those who passed over it to cross a track in order to reach a train upon a track beyond, involved necessarily a condition of things which under one view of the testimony constituted an implied invitation to the passengers to follow that course in order to board the train which they desired to take. While it is true, as said in Warner v. Baltimore & Ohio R. R. Co., quoting Terry v. Jewet, supra,

"that such implied invitation would not absolve a passenger from the duty to exercise care and caution in avoiding danger, nevertheless it certainly would justify him in assuming that, in holding out the invitation to board the train, the corporation had not so arranged its business as to expose him to the hazard of danger to life and limb unless he exercised the very highest degree of care and caution. The railroad, under such circumstances, in giving the invitation, must necessarily be presumed to have taken into view the state of mind and of conduct which would be engendered by the invitation, and the passenger, on the other hand, would have a right to presume that in giving the invitation the railroad itself had arranged for the operation of its trains with proper care."

As the duty of care and caution is placed upon both the passenger and the railroad in different degrees, it rests with a jury to say how much in a given case a passenger may rely upon the care exacted of the railroad in her behalf, whether her reliance upon the railroad was greater than the care demanded of it, and whether, in relying upon protection by the railroad, she failed to care for herself to the extent which under the circumstances the law required of her.

The failure of Josephine Duryea to look and listen, and the failure of Mildred D. Price not to look, but to see when she looked what might have been seen, may or may not have been contributory negligence according to the peculiar facts of each case, and, as held in Warner v. B. & O. R. R. Co., 168 U. S. 339, 18 Sup. Ct. 68, 42 L. Ed. 491, Graven v. MacLeod, 92 Fed. 846, 35 C. C. A. 47, and Chesapeake & Ohio Ry. Co. v. King, 99 Fed. 251, 40 C. C. A. 432, 49 L. R. A. 102, were questions of fact for the jury.

We are of opinion that these are not cases where the facts inferable from the evidence were such that from them all reasonable men would of necessity draw the same conclusion. Grand Trunk Ry. Co. v. Ives, 144 U. S. 408, 417, 12 Sup. Ct. 679, 36 L. Ed. 485; Warner v. B. & O. R. R. Co., 168 U. S. 339, 18 Sup. Ct. 68, 42 L. Ed. 491. We therefore hold that the trial court committed no error in submitting to the jury the question of negligence of the railroad company in failing to protect the plaintiffs from the danger of a train driven at high speed past the station across a passageway provided by it for their use at a time when passengers were invited to the station to board other trains, and in refusing to hold as a matter of law, and in submitting to the jury as a question of fact, whether the plaintiffs by their conduct, under the circumstances, were guilty of contributory negligence.

The judgments below are affirmed.