## CHICAGO, M. & ST. P. RY. CO. v. HARRELSON.

(Circuit Court of Appeals, Eighth Circuit. September 25, 1926.)

No. 7243.

**1. Carriers ⬤═282.**

Railroad owed to minor passenger highest practical degree of care, and his age must be considered in measurement of such care.

**2. Carriers ⬤═320(1).**

If question whether railroad exercised highest practical degree of care towards passenger is one on which reasonable men may differ on evidence, it is for jury.

**3. Carriers ⬤═320(3).**

Evidence as to whether railroad exercised proper care towards small boy, injured in re-entering train after following conductor to station platform, held for jury.

**4. Carriers ⬤═247(5).**

Minor passenger did not lose his status as passenger by alighting at station on promise of conductor to show him four engines arriving from different points.

**5. Carriers ⬤═321(6).**

Instructions relative to degree of care owing to passenger leaving train at station and injured in boarding it held to fairly present case to jury.

**6. Appeal and error ⬤═273(5, 8).**

Exception to giving of written instructions offered and to refusal to give requested instructions held insufficient to raise any question for Circuit Court of Appeals.

**7. Witnesses ⬤═389.**

Admission by witness of self-contradiction held not to deprive the other party of right to show it, because not unambiguous and unequivocal.

**8. Witnesses ⬤═393(6).**

Permitting reading of entire deposition for purpose of impeachment, on theory witness had not said things which he related on stand, although not to be commended, rests largely in discretion of trial court.

**9. Appeal and error ⬤═1048(7).**

Admitting as impeachment, parts of deposition previously taken from witness which were merely cumulative to evidence given on the stand, held not prejudicial error.

**10. Witnesses ⬤═393(4).**

Parts of deposition inconsistent with material evidence of witness given at trial held admissible on theory of impeachment.

In Error to the District Court of the United States for the Western District of Missouri; Albert L. Reeves, Judge.

Action by William Brooks Harrelson, a minor, by his next friend, Howard M. Harrelson, against the Chicago, Milwaukee & St. Paul Railway Company. Judgment for plaintiff, and defendant brings error. Affirmed.

Howard L. Hassler, of Kansas City, Mo. (C. R. Sutherland, of Chicago, Ill., and E. R. Morrison and Morrison, Nugent, Wylder & Berger, all of Kansas City, Mo., on the brief), for plaintiff in error.

John G. Madden, of Kansas City, Mo. (T. J. Madden, Harry R. Freeman, and Madden, Freeman & Madden, all of Kansas City, Mo., on the brief), for defendant in error.

Before KENYON and VAN VALKENBURGH, Circuit Judges, and JOHN B. SANBORN, District Judge.

KENYON, Circuit Judge. Plaintiff in error (for convenience designated in this opinion as defendant) is a common carrier of passengers and freight.

William Brooks Harrelson, a minor, who was between 9 and 10 years of age at the time of the occurrence in question, is defendant in error (but will be designated as plaintiff, the case being brought against the Chicago, Milwaukee & St. Paul Railway Company by his father, Howard M. Harrelson, as his next friend).

August 1, 1922, plaintiff was a passenger on a train of defendant, en route from Des Moines, Iowa, to Spirit Lake, Iowa. He was in the company of his mother, his cousin, Dr. N. O. Harrelson, and the latter's wife and minor child. There is no question raised in this case as to the status of plaintiff as a passenger. At some time during the passage before the town of Yale was reached, W. L. Finicum, defendant's conductor in charge of the train, talked with the plaintiff and his mother. As a result thereof the boy went with him from the day coach, where they were sitting, into the smoking car. Shortly thereafter the train arrived at Yale. The conductor went to the depot platform, and the boy followed him. There is much discrepancy in the evi-

dence as to the circumstances surrounding the leaving of the train by plaintiff and the attempted return thereto, the plaintiff testifying that the conductor had told him about the place where four engines came in at the same time from different directions, and that it was at the next stop; that the conductor told him, when they were on the station platform at Yale and he inquired about the four engines, "They are at the next station, we must get back on the train." In any event, the conductor got upon the train, and the boy, in attempting to get upon the steps of the day coach, in some way missed his footing and went under the car, the rear truck passing over him and cutting off one of his legs between the ankle and the knee. At the close of the evidence a demurrer thereto was interposed by defendant, which would accomplish the same purpose as a motion to instruct a verdict. This was overruled by the court. The case was submitted to the jury, and a verdict was returned for plaintiff for $20,000. Defendant brings the case here by writ of error.

Three points are raised and argued:

First. Alleged error of the court in refusing to give the instruction requested by defendant in the nature of a demurrer to all the evidence at the close of the testimony.

Second. Error in giving to the jury two written instructions, hereafter set forth, requested by plaintiff.

Third. Error in permitting plaintiff's counsel to read for the purpose of impeaching witness, Finicum, an entire deposition of said witness taken some time previous.

We take these up in their order. Plaintiff's case was based on defendant's alleged negligence in two particulars: (a) That the conductor of defendant's train caused or permitted plaintiff to leave the train at the town of Yale; and (b) caused or permitted the train to start at said town when he knew or by the exercise of the proper degree of care should have known that plaintiff was not upon the train, and that he intended and would attempt to re-enter it. There is no claim or suggestion of contributory negligence.

The court would not have been justified in giving the requested instruction, which of course amounted to the direction of a verdict for the defendant, if, as a matter of law, there was sufficient evidence to submit to the jury either of the negligence charges.

As to the alleged negligence of the conductor in causing or permitting plaintiff to leave the train at a point other than his destination, it is the theory of defendant that the injury to plaintiff resulted from the attempt

of the conductor to do an act outside the scope of his employment, viz. to entertain the boy.

[1] This boy occupied the status of a passenger. The railroad owed to him the highest practical degree of care upon the part of its employees in carrying out the contract of carriage to transport him to his destination, and his age must be taken into consideration in the measurement of such care. New Jersey Steam-Boat Co. v. Brockett, 121 U. S. 637, 7 S. Ct. 1039, 30 L. Ed. 1049; Warner v. Baltimore & Ohio R. R. Co., 168 U. S. 339, 18 S. Ct. 68, 42 L. Ed. 491; Delaware, L. & W. R. Co. v. Price, 221 F. 848, 137 C. C. A. 406; Trapnell v. Hines, Director General of Railroads (C. C. A.) 268 F. 504; Laub v. Chicago, B. & Q. Ry. Co., 118 Mo. App. 488, 94 S. W. 550; Dore v. Omaha & C. B. St. R. Co., 97 Neb. 250, 149 N. W. 792.

[2] The question of whether the highest practical degree of care was exercised under the circumstances, if one upon which reasonable men may differ under the evidence, is for the jury. Grand Trunk Railway Co. v. Ives, 144 U. S. 408, 12 S. Ct. 679, 36 L. Ed. 485; Baltimore & Ohio R. R. Co. v. Griffith, 159 U. S. 603, 611, 16 S. Ct. 105, 40 L. Ed. 274; Warner v. Baltimore & Ohio R. R. Co., 168 U. S. 339, 18 S. Ct. 68, 42 L. Ed. 491.

[3] Plaintiff's testimony is to the effect that he got off at Yale because of the promise of the conductor to show him at the next stop the four engines arriving there from different points of the compass. While the conductor may have been engaged in trying to entertain the boy and may have done things outside the scope of his duty in acting as entertainer, as urged by defendant, yet when his entertainment, if it may be so styled, of the child commenced, it did not terminate the relationship of carrier and passenger. The duty to exercise the highest practical degree of care in the transportation of the boy as a passenger remained, whether he was being entertained or not.

If the conductor's evidence is true, he left plaintiff on the train in the smoker when he got off at Yale, after telling him that Herndon was the place where he would see the four engines, and admonishing him to stay where he was until his return, and never saw him again until after he was hurt. There is presented therefore a sharp dispute as to the facts. It is not for us to determine whose testimony is to be believed. That was for the jury, and we think as to this charge of defendant's negligence the question of whether the conductor had exercised that degree of

care which the law exacts of a carrier in the transportation of an infant passenger was clearly for the jury.

As to the ground of alleged negligence of the conductor while on the station platform, the same situation presents itself as to the evidence. Defendant's brief correctly states the proposition as follows: "The question simmers down to the one point—whether the conductor knew or should have known that plaintiff was upon the platform near the train and intended to and would attempt to re-enter it."

The jury were warranted, if they believed plaintiff's evidence, in finding that plaintiff followed the conductor to the platform; that while on the platform he asked the conductor about the four engines, the conductor reply-.ing, "They are at the next station, we must get back on the train"; that the conductor as the train started stepped upon the car step of the forward coach, blocking plaintiff's entrance thereto, and the plaintiff, in an attempt to get on the rear coach, fell thereunder and was seriously injured.

On the other hand, if the jury believed the conductor, they could well find that he left the boy in the seat of the smoker, and that he did not see him again until after his injury. It is rather remarkable and difficult of belief that a conductor, who had been 40 years in the service with the humane instincts of men in this line of work, should leave the 9-year old boy on the station platform, pay no attention to him, get upon the train and block the passage of the boy onto the steps of the car; yet this was a question of fact for the jury to pass on.

[4] The boy had not lost his status as a passenger by alighting from the car at this station under the circumstances narrated by him, and the duty remained upon the part of the carrier to exercise the highest degree of practical care toward him. Parsons v. New York Central & H. R. R. Co., 113 N. Y. 355, 21 N. E. 145, 3 L. R. A. 683, 10 Am. St. Rep. 450; Gannon v. Chicago, R. I. & P. Ry. Co., 141 Iowa, 37, 117 N. W. 966.

From the facts presented on both grounds of negligence, it certainly cannot be inferred that all reasonable men would of necessity draw the same conclusion with reference thereto. There was evidence to support the charge of negligence as to the conductor while on the train and also while on the station platform. The court did not err in refusing to instruct a verdict for defendant.

[5] Defendant urges error in two instructions which were requested by plaintiff and given by the court. The first is as follows:

"The court instructs the jury that plaintiff was a passenger upon the train in question, and, if you find and believe from the evidence that he left the train at Yale, either at the suggestion of the conductor or of his own volition and stood upon the platform near the train with the intention to re-enter it before it left the station, then in the eye of the law he was a passenger while on the platform and was entitled to have exercised toward him the highest practicable degree of care for his safety by the train crew in charge of defendant's train, and, if they knew, or in the exercise of the highest practicable degree of care could have known, that plaintiff was upon the platform before the train started, and that he intended and would attempt to re-enter said train before it left the station, and in the exercise of the highest practicable degree of care they could have anticipated that plaintiff might attempt to re-enter said train after it started and be injured in doing so, then it was their duty to see that he was on the train before it started, and their failure to do so constituted negligence, and your verdict shall be in favor of the plaintiff. The highest practicable degree of care as used in this instruction means the degree of care which a very prudent person engaged in the same business would exercise under the same or similar circumstances."

The second of said instructions is as follows:

"The court instructs the jury that, if you believe and find from the evidence that Conductor Finicum told the plaintiff that at the next station he would take him off the train and show him four engines and that the next station was Yale and that plaintiff was thereby induced to leave the train at Yale and go upon the platform, and, if you further find that a very careful person in the position of the conductor and under the circumstances shown in evidence taking into consideration plaintiff's age and capacity would have known that such statements would induce plaintiff to leave the train at said station, then the conductor in making such statements to the plaintiff was guilty of negligence and the defendant company is chargeable therewith, and, if you further find that, as a direct result of leaving the train at said time and place and going upon the platform, the plaintiff was injured while attempting to reboard said train, then your verdict should be in favor of the plaintiff and against the defendant. To make the master liable for the act of a servant the act must be done only while the servant is employed in the master's business."

[6] At the close of the instructions of the court, defendant excepted to certain portions

of the court's charge which related to the duty defendant owed the plaintiff while on the depot platform at Yale, and to that portion of the court's charge referring to liability predicated upon the fact that the conductor took the plaintiff away from the custody and control of his mother. These were the only two specific exceptions and objections made to the instructions. After making these exceptions, counsel for defendant said: "The defendants except to the giving of the written instructions offered by the plaintiff, and except to the refusal to give those in writing which were requested by the defendant." This is the only exception to the giving of the written instructions offered by the plaintiff. Such exception is not sufficient to raise any question for this court. It has been frequently reiterated by the federal courts that the exception to the instruction or to parts thereof must be so specific that the trial court may know the particular point complained of. It is a salutary and common sense rule that, if opportunity is not offered the trial court to correct alleged faults in the instructions, they cannot be made the basis of error proceedings here, and the rule is so well settled that it is scarcely necessary to enumerate the cases. However, see McDermott v. Severe, 202 U. S. 600, 26 S. Ct. 709, 50 L. Ed. 1162; Norfolk Ry. Co. v. Earnest, 229 U. S. 114, 122, 33 S. Ct. 654, 57 L. Ed. 1096, Ann. Cas. 1914C, 172; United States v. United States Fidelity & Guaranty Co., 236 U. S. 512, 35 S. Ct. 298, 59 L. Ed. 696; Guerini Stone Co. v. Carlin Constr. Co., 248 U. S. 334, 39 S. Ct. 102, 63 L. Ed. 275; Pennsylvania R. R. Co. v. Minds et al., 250 U. S. 368, 39 S. Ct. 531, 63 L. Ed. 1039; Chicago Great Western Ry. Co. v. McDonough, 161 F. 657, 88 C. C. A. 517; Simmons Hardware Co. v. Southern Ry. Co. (C. C. A.) 279 F. 929; Deupree v. United States (C. C. A.) 2 F. (2d) 44.

In Norfolk Ry. Co. v. Earnest, 229 U. S. 114, 122, 33 S. Ct. 654, 657 (57 L. Ed. 1096, Ann. Cas. 1914C, 172), which is in point here, the Supreme Court said: "That where an instruction embodies several propositions of law, to some of which no objection properly could be taken, a general exception to the entire instruction will not entitle the exceptor to take advantage of a mistake or error in some single or minor proposition therein."

While the exceptions are not sufficient to raise any question as to the particular instructions complained of, we are satisfied from an examination of the entire instructions of the court that the case as to the law was fairly presented to the jury.

Defendant's conductor, Finicum, was a witness, and testified, it was claimed by plaintiff, to matters he had not testified to when his deposition was taken shortly after the accident occurred. The court in admitting the deposition said: "It will be admitted for the purpose of impeaching the witness, and for no other purpose." Two matters seem to have been developed in Finicum's testimony at the trial which were not covered by the deposition. One was the alleged statement by him to the plaintiff as he left the car to go out on the depot platform: "I told him, 'Now this is Yale. You stay here until I come back. Then I will take you back to your folks and when we get over to Herndon, which is the next station, you can get out and eat and see the engines.' That is the substance of it." The other, that he looked back as he left the car and saw the plaintiff still in his seat.

It seems to be conceded that it was proper impeachment to show the witness' omission of these matters under the circumstances presented, as it is probable that such facts, if true, would have been stated by him at the time the deposition was taken. The argument is that the impeachment as to the first statement was improper because the witness admitted the omission, and hence there was nothing to impeach. As to the second objection, that only so much of the deposition should have been read as pertained to the witness' talk prior to leaving the train, it is doubtful if proper objection was made at the trial to preserve the same for appellate review. It is also doubtful if these objections were properly raised in defendant's assignments of error. However, we consider them. [7] At the trial, the conductor in substance testified that he told the boy as the train was coming to a stop at Yale to stay in his seat until he came back, and that he would take him back to his folks and he could get out at the next station, which was Herndon, and see the four engines. He had not so testified in his deposition, but defendant claims the deposition is not admissible in impeachment as to this matter, because the conductor admits he did not so testify in the deposition. The record discloses that he was not certain, and said, when asked if that was not the first time he had mentioned it in the case, "I do not know whether it is or not; I believe it is." Whether an admission of self-contradiction deprives the other party to the case of the right to show it need not be determined, but it is unquestionably true that as a basis for any affirmation of such proposition the admission must be unambiguous and unequivocal. It was not so here.

The second point complained of is as to the reading of the entire deposition to impeach, by showing that he did not so testify when the deposition was taken, the conductor's testimony on the trial that he looked back as he left the car and saw the plaintiff in his seat. This method of impeachment was objected to on two grounds: (1) That it was brought out on cross-examination (this, however, was waived); (2) because only portions of the deposition should have been read. [8] We think the reading of the entire deposition of the conductor was bad practice. It is not to be commended. Because the attempt to impeach him was based on the theory that he had not in his deposition anywhere said certain things which he related on the stand in the trial, is not sufficient warrant for using the entire deposition. Only the parts which were related to or bore upon the particular transaction concerning which impeachment was sought should have been read to the jury. Such matters are, however, largely within the sound judicial discretion of the trial court. 40 Cyc. 2782; Salem News Pub. Co. v. Caliga, 144 F. 965, 75 C. C. A. 673; Brinkley Car Works & Mfg. Co. v. Cooper, 75 Ark. 325, 87 S. W. 645; State ex rel. Shaw Transfer Co. v. Trimble et al. (Mo. Sup.) 250 S. W. 396.

[9, 10] It is disclosed by the examination of the witness Finicum that a great many of the questions asked him on the trial were asked him when the deposition was taken. The parts of the deposition that were inconsistent with the material evidence of the witness at the time of the trial were admissible on the theory of impeachment. The parts that did not relate thereto were merely cumulative to the evidence given by the witness on the stand. We do not see how there could be any such prejudice in the procedure as to warrant a reversal. The circumstances of this case as presented by the evidence make it peculiarly one for the determination of the jury. The record presents no serious errors.

The judgment of the trial court is affirmed.